IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAMIEN LARON MCDANIEL** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| vs. | ) | **2:22-cv-08001-LSC** |
| | ) | **(2:13-cr-00067-LSC)** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OF OPINION**

Petitioner Damien Laron McDaniel ("McDaniel") filed with this Court a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) This Court has conducted a review of the motion and determines that it is due to be denied and this action dismissed.

**I.    Background**

On October 30, 2013, a grand jury issued a six-count superseding indictment against McDaniel. (Cr. Doc. 4.)[1] Count One charged McDaniel with possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count Two charged McDaniel with using and carrying a firearm in relation to the drug trafficking offense alleged in Count One, in violation of 18

---

[1] "Cr. Doc." refers to a document entry in the underlying criminal case: 2:13-cr-00067-LSC.

U.S.C. § 924(c)(1)(A)(i); Counts Three and Six charged McDaniel with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); Count Four charged McDaniel with possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and Count Five charged McDaniel with possessing a firearm in furtherance of the drug trafficking offense alleged in Count Four, in violation of 18 U.S.C. § 924(c)(1)(A). (*Id.*)

On December 6, 2013, this Court set a trial date of January 6, 2014. (Cr. Doc. 12.) On December 17, 2013, McDaniel filed a pro se motion requesting the appointment of new counsel. (Cr. Doc. 13.) On January 6, 2014, the morning of trial, the Court allowed McDaniel's appointed counsel to withdraw, and McDaniel retained private counsel of his choosing. (Minute Entry on 1/6/2014.) At the request of McDaniel's retained counsel, the Court re-scheduled the trial for February 10, 2014. (*Id.*)

Before trial, McDaniel's new counsel negotiated a binding plea agreement with the Government, whereby the Government agreed to dismiss Count Five. (Cr. Doc. 25.) McDaniel pled guilty to the remaining counts, and the plea agreement stipulated to a total sentence of 312 months' imprisonment. (*Id.* at 8.)

At the sentencing hearing on May 27, 2014, McDaniel made a pro se oral motion to withdraw his guilty plea. (Cr. Doc. 49 at 10.) After a full hearing as to why he wanted to withdraw his guilty plea, this Court denied the motion. (*Id.* at 10-

19.) Accepting the binding plea agreement, this Court sentenced McDaniel to a total sentence of 312 months' imprisonment and entered judgment on May 29, 2014. (Cr. Doc. 31.)

McDaniel filed his first motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 on March 4, 2016. (*See* 2:16-cv-08012-LSC.) This Court denied McDaniel's motion on February 12, 2018. (*Id*. at doc. 10.)

McDaniel filed the present § 2255 motion on January 5, 2022. (Doc. 1.)

## II.     Second and Successive Petition

This is McDaniel's second motion filed pursuant to § 2255. Thus, it is due to be denied for lack of jurisdiction. 28 U.S.C. § 2255(h) requires McDaniel to follow the procedures of 28 U.S.C. § 2244(b)(3)(A), which states that before a second or successive § 2255 motion may be filed, the petitioner must first obtain an order from the Eleventh Circuit authorizing the district court to consider the motion. 28 U.S.C. §§ 2244(b)(3)(A), 2255(h). Without the Eleventh Circuit's authorization, the district court lacks jurisdiction to consider a second or successive § 2255 motion. *United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005). There is no indication that McDaniel has received such authorization from the Eleventh Circuit. Therefore, his motion is due to be dismissed for lack of jurisdiction.

## III.    Discussion

Although the Court is persuaded this case should be dismissed as second and successive, the claims alleged by McDaniel also lack merit.[2]

In his petition, McDaniel alleges he has a transcript of his pre-trial hearing that is "newly discovered evidence." (Doc. 1 at 15.) He states in his petition that this transcript shows his Fifth and Sixth Amendment rights were violated because he was denied due process and effective assistance of counsel. (*Id.* at 4.) McDaniel believes this transcript shows the Court "involved itself with plea negotiations and demonstrates the courts failure to allow Mr. McDaniel's his constitutional right to counsel." (*Id.* at 15.)

### A. Plea Negotiations

McDaniel alleges that this Court involved itself in plea negotiations in violation of Rule 11 of the Federal Rules of Criminal Procedure. (*Id.*) In regard to Plea Agreement Procedure, Rule 11 mandates that "[t]he court must not participate in [plea] discussions." Rule 11(c)(1), Federal Rules of Criminal Procedure. For the reasons discussed below, this allegation is barred and has no merit.

### i. Appeal and Post-Conviction Waiver in Plea Agreement

---

[2] McDaniel alleges he recently gained access to the transcript of his pre-trial hearing that was not available at the time of his initial motion. (Doc. 1 at 4.) Because of the transcript, the Court is addressing the merits based upon the holding in *Boyd v. US*, 754 F.3d 1298, 1302 (11th Cir. 2014), which held that a subsequent motion may not always be successive when "the underlying facts giving rise to [a] claim did not exist at the conclusion of [an] initial § 2255 motion." However, the Court is not determining whether this transcript would constitute "newly discovered evidence."

First, McDaniel's allegation that the Court involved itself in plea negotiations is barred by the "waiver of right to appeal and post-conviction relief" present in his plea agreement with the government. (Cr. Doc. 25 at 9.) The only three mechanisms in which McDaniel can bring a challenge pursuant to his waiver is: "(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s); (b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and (c) Ineffective assistance of counsel." (*Id.* at 10.) McDaniel signed the waiver and indicated to the Court during his change of plea hearing that he understood the right he was giving up. (*Id.* at 11; Cr. Doc. 48 at 19-20.) Because he understood the content of the appeal and post-conviction waiver, and the allegation that this Court involved itself in plea negotiations does not fit within one of these three exceptions, this claim is barred by his plea agreement.

### ii.     Merits

As well as being barred by the waiver present in his plea agreement, McDaniel's claim also has no merit. In his allegation that this Court improperly involved itself in plea negotiations, McDaniel relies on the following exchange:

> The Court: If you plead guilty, you get certain benefits of doing that, the benefit of whatever the deal is you have with the government. It's illegal for me to get involved in plea negotiations, and I don't intend to.
>
> The defendant: Yes, sir.

> The Court: I am happy for a defendant to try their case. Now, if you get convicted when you try your case, then that's bad for you because you lose acceptance of responsibility.
>
> The defendant: Yes, sir.
>
> The Court: That changes the calculation of the guideline range, which is to assist me in determining how much time to give you in prison, if I choose to do that; if I think that's what's appropriate.

(Cr. Doc. 73 at 8.) However, the complete colloquy between the Court and McDaniel was not in his petition. This Court went further to state "and if you win your case and you are found not guilty, then obviously you're far better than if you pled guilty. You have to make that decision." (*Id*. at 8-9.) The Court was not involving itself in the negotiations,³ but rather making sure McDaniel understood the repercussions of his decisions. In fact, this conversation between the Court and McDaniel was prompted because his lawyer at the time asked the Court to "advise Mr. McDaniel the consequences of proceeding forward and losing the ability to obtain acceptance of responsibility." (*Id.* at 7-8.)

McDaniel also points to another quote by this Court during the same hearing: "The taxpayers have to pay for their trip down here. You will not get acceptance of responsibility even if you plead guilty past that point. Do you understand me?" (Doc.

---

³ In fact, the Court, as quoted above, stated "It's illegal for me to get involved in plea negotiations, and I don't intend to." (Cr. Doc. 73 at 8.) Later in the same hearing, when the government and McDaniel were about to further discuss plea agreements, the Court stated, "I don't think I should be here during that plea discussion." (*Id.* at 16.) Thus, this indicates the Court was aware of its obligation under Rule 11 and had no intention of violating it.

1 at 25.) Notwithstanding this Court stating that, the presentence investigation report included the acceptance of responsibility downward variance in creating his total offense level. (Cr. Doc. 29 at 11.) Additionally, the Court adopted the binding plea agreement, therefore having no discretion over the sentence pronounced regardless.

Aside from these points, a violation of Rule 11 in this instance would not result in any relief for McDaniel. A violation of Rule 11(c)(1), which states the judge is to not be involved in plea negotiations, does not warrant an automatic reversal. *US v. Davila*, 569 U.S. 597, 611 (2013). In fact, the test to be applied is "whether it was reasonably probable that, but for the [District] Judge's exhortations, [the defendant] would have exercised his right to go to trial." *Davila*, 569 U.S. at 612. Because McDaniel retained a new lawyer, made plans to go to trial, but ultimately decided to plead guilty all after this alleged infraction by this Court, it is not "reasonably probable" that he would have exercised his right to go to trial but for the words of this Court. In fact, he wanted to go to trial *after* these comments were made, which was demonstrated by McDaniel stating "Yes, sir" when this Court asked McDaniel if everything sounded alright with proceeding forward with a new trial date, and ultimately having a new trial date set. (Cr. Doc. 73 at 36.) There is no indication in the record that these words spoken by the Court had *any* effect on McDaniel's ultimate decision to plead guilty in lieu of going to trial; but rather, his decision was

based upon the advice of his new lawyer and the binding plea agreement his lawyer secured with the government.

For these reasons, the Court was not improperly involving itself with plea negotiations and this allegation is due to be dismissed.

## B. Right to Counsel

McDaniel also alleges that his Sixth Amendment right to counsel was violated. (Doc. 1 at 4.) He alleges the basis for this is the Court "forcing McDaniel[] to either retain counsel or to proceed with counsel in which there were irreconcilable differences." (*Id.* at 15.) For the reasons detailed below, this allegation is barred and has no merit.

### i. Appeal and Post-Conviction Waiver in Plea Agreement

Just as detailed above in regard to his plea negotiations claim, this right to counsel claim is also barred by the waiver in his plea agreement. He is not alleging his sentence itself was improper, so the only potential avenue available to pursue due to his waiver is ineffective assistance of counsel. (Cr. Doc. 25 at 9.) However, this right to counsel claim does not fit within the confines of ineffective assistance of counsel.

This Court granted McDaniel, *on the day of his trial*, a continuance and allowed him to retain counsel of his choosing. (*See* Cr. Doc. 73.) This retained counsel helped McDaniel enter into a binding plea agreement with the government.

McDaniel spends much of his petition discussing his disagreement with the Court's decision to not appoint another attorney for him. (*See* Doc. 1.) However, this is not an ineffective assistance of counsel claim. McDaniel in no way alleges that his retained counsel was ineffective, but rather, as the Eleventh Circuit noted in their opinion of McDaniel's appeal, McDaniel said his "counsel had done a great job, and that he did not have any complaints about counsel's representation." *See* USCA 14-12600; Cr. Doc. 54. Thus, this claim is not based on ineffective assistance of counsel, but rather a decision of this Court, and is therefore barred by his waiver.

### i. Merits

As well as being barred by the waiver in his plea agreement, McDaniel's right to counsel claim also has no merit. At his sentencing hearing, the following dialogue took place:

> The Court: All right. Let's kind of take things one step at a time. You had counsel originally appointed, I believe, in this case. . . . I think it was Mr. Collins, Derrick Collins.
>
> The Defendant: Yes, Sir. Correct, Your Honor.
>
> The Court: And you asked that this Court terminate his representation of you and allow your current counsel to represent you?
>
> The Defendant: Yes, Sir. Yes, Sir.
>
> The Court: You actually retained him, correct?
>
> The Defendant: Yes, Sir.
>
> The Court: Is that correct?

>The Defendant: Yes, Sir, Your Honor.
>
>The Court: And we had your case set for trial, If I remember right, the first time and had a jury - - was it the morning of the trial? I can't remember. It was morning of the trial - - yeah, it was the morning we had your trial ready to start that you did that, when we replaced your counsel. Remember that?
>
>The Defendant: Yes, Sir, Your Honor.
>
>The Court: And you and I had a long conversation at that time. And your current counsel said he would be ready to try the case and we actually moved the case off a number of months to allow him to do that. He had, I think, some capital cases and what-not going, if I remember right. And we were glad to accommodate him to move the case off. Then when we got ready for the trial, you entered into a binding plea with the government, binding plea as I explained means I don't really have a choice. . . .
>
>The Defendant: Yes, Sir, Your Honor.

(Cr. Doc. 49 at 12-14.) This dialogue demonstrates that the Court allowed McDaniel to retain the counsel of his choosing. In fact, it was McDaniel's idea to retain counsel. In the pretrial hearing, McDaniel stated, "and I wanted, if possible, to obtain other counsel, Mr. Olufemi." (Cr. Doc. 73 at 7.) This Court then asked him, "you want to decide who you get to pick?" (*Id.*) McDaniel answered by saying "I was going to retain him myself." (*Id.*) Thus, this shows it was the defendant himself who first mentioned the idea of retaining counsel, rather than substituting appointed counsel as he originally requested in his motion. (*See* Cr. Doc. 13.) To the extent

McDaniel is alleging the Court should have appointed him new counsel, he failed to meet that burden.

McDaniel asserts that he did not trust Mr. Collins, his appointed counsel, and he was deficient in maintaining their communication, did not provide him with discovery materials on an adequate timeline, and failed to provide a key transcript of a phone call that was available to the government. (Doc. 1 at 17-18.)

In regard to the deficient communication, this Court verified the degree of McDaniel's interactions with Mr. Collins. McDaniel stated that "[Mr. Collins] came three times to see [him]." (Doc. 1 at 33.) Mr. Collins asserted that he had "consulted with Mr. McDaniel on a number of occasions," a statement which McDaniel did not contest. (Doc. 1 at 39.) Thus, the allegations of failed communication lack factual substantiation and are not credible in the face of the record.

As to the lateness of certain discovery materials, this Court consulted Mr. Collins and Mr. Hunter, the attorney appearing for the government regarding this issue. McDaniel wanted to view "the reports" and alleged that Mr. Collins' deliverance of them on December 23, 2013 displayed ineffective assistance of counsel. The record illustrates that this date of delivery was not due to deficient performance on Mr. Collins' part:

> Mr. Hunter: It is my understanding of the U.S. Attorney's Policy not to turn over certain [documents] in hard form to people who are incarcerated so it doesn't get disseminated throughout the jail. I worked with Mr. Collins. I know he we [sic] went over there and had him

> look through all of it. And after this motion was filed, I went back through and did a – scanned through the reports to make sure there was nothing we would be concerned about being submitted in jail, and then produced hard copies to the defendant so that he could look at the evidence on his own time and come to his own conclusion.

(Doc. 73 at 4-5.) McDaniel confirmed that he had received these documents. The quote above illustrates that the delivery date of these reports was not due to any fault on the part of Mr. Collins, but rather due to the policies of the U.S. Attorney's Office. As such, Mr. Collins performance did not constitute ineffective assistance of counsel since the delay was not due to unreasonable action on his part.

Lastly, as to the transcript of a phone call McDaniel alleges he did not receive, one does not exist. The Court asked the government if the transcript existed, in which they responded "No, your honor." (Cr. Doc. 73 at 6.) McDaniel then admitted he was present on the call and that he heard the recordings several times. (*Id.* at 6-7.) The Court found because McDaniel was on the call, a written transcript was not necessary, and he was not going to require the government to create one. (*Id.* at 13.) Therefore, this claim also has no merit because it was the Court who made the ultimate decision that McDaniel would not receive a written transcript, not his attorney.

Because the three allegations against his attorney are contradicted in the record, no basis for appointing a new attorney existed. He stated there were "irreconcilable differences" and said he did not trust his lawyer, but never gave any

basis for those accusations, other than one comment that Mr. Collins "said things to [him] about other clients." (*Id.* at 21.) He did not give any additional details and did not provide any other information as to why he did not trust him outside of the three baseless allegations detailed above. Because "[a] defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient" and "[g]ood cause for substitution of counsel cannot be determined solely according to the subjective standard of what the defendant perceives," McDaniel did not rise to that standard for a substitution of appointed counsel to be required. *US v. Aybar*, 446 F. App'x 221, 227 (11th Cir. 2011) (quoting *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1986)).

For the reasons stated above, the present § 2255 motion (doc. 1) is due to be denied and this case dismissed with prejudice.

Additionally, to the extent this dismissal necessitates a ruling on the certificate of appealability issue, one will not be issued by this Court. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336

Page **13** of 14

(2003) (internal quotations omitted). McDaniel's claims do not satisfy either standard. Accordingly, insofar as an application for a certificate of appealability is implicit in McDaniel's motion, it is due to be denied.

A separate closing order will be entered.

**DONE** and **ORDERED** on January 26, 2024.

                                                    L. Scott Coogler
                                       United States District Judge

215708